UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                                  )
                                                       )    Case No. _____
                                                       )
                                                       )    NOTICE OF **_FINAL_**
                                                       )    HEARING ON MOTION
                                                       )        FOR USE OF CASH COLLATERAL
                                                       )        TO OBTAIN CREDIT
Debtor(s)                                              )    *(Check One)*

YOU ARE NOTIFIED THAT:

1.   The undersigned moving party, _____, filed a Motion ☐ For Use of Cash Collateral ☐ To Obtain Credit *(check one)*.  A copy of the motion, which INCLUDES the statement required by Local Form #541.7, is attached.

2.   The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3.   A **_FINAL_** HEARING on the motion WILL BE HELD ON _____ AT_____ IN _____, and testimony will be received if offered and admissible.

4.   If you WISH TO OBJECT to the motion, YOU SHALL, WITHIN 10 DAYS OF THE SERVICE DATE SHOWN in pt. 5 BELOW, FILE with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), BOTH:  (1) a written response, which states the facts upon which you will rely, AND (2) a certificate showing a copy of the response has been served on the U.S. Trustee and the party named in pt. 2 above.  See Local Form #541.50 for details.

5.   On _____ copies of BOTH this notice AND the motion, were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:




_____
Signature
_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541 (12/1/09)     **Local Form #541.50 ATTACHED IF this NOTICE served on PAPER**

## MOTIONS AND *FINAL* HEARINGS  RE USE OF CASH COLLATERAL, OR TO OBTAIN CREDIT

1. Motion - Each motion must include the statement required by Local Form #541.7.

2. Notice of *FINAL* Hearing on Motion - The moving party shall COMPLETELY fill out Local Form #541 [NOTE: LOCAL FORM #541 REQUIRES YOU TO OBTAIN THE DATE, TIME AND ADDRESS OF HEARING FROM THE COURT BEFORE SERVICE!]

3. Service of Motion AND Notice - The moving party shall SIMULTANEOUSLY serve copies of BOTH the motion AND the NOTICE (Local Form #541) on all of the parties listed in pt. 5 of the Notice.

    **NOTE:  THIS SERVICE SHALL BE MADE WITHIN 2 BUSINESS DAYS AFTER RECEIVING THE HEARING DATE, ETC., OR ELSE THE COURT SHALL BE NOTIFIED AND A NEW DATE, ETC. REQUESTED.  SANCTIONS MAY BE IMPOSED FOR FAILURE TO COMPLY!**

4. Filing of Motion AND Notice with Clerk's Office - On the same date as copies are served as provided in pt. 5 of the Notice, the moving party will mail to, or directly file with, the Clerk of Court BOTH:  (a) the completely filled out original Notice of Motion WITH (b) the original Motion attached thereto.

541.50 (12/18/06)

**James Ray Streinz,** OSB No. 794107
   Direct Dial: (503) 412-3512
   Facsimile: (503) 243-2687
   E-mail:   rays@mcewengisvold.com
**McEWEN GISVOLD LLP**
1600 Standard Plaza
1100 SW Sixth Avenue
Portland, Oregon 97204

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>WURDINGER HOLDINGS, INC.<br><br>                Debtor. | Bankruptcy Case No. 13-33225-elp11<br><br>DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN CREDIT TO RENEW INSURANCE POLICIES |

      Wurdinger Holdings, Inc., as debtor and debtor-in-possession ("Debtor"), moves this Court for an order authorizing Debtor to obtain credit from US Premium Finance ("USPF") on a secured basis pursuant to 11 U.S.C. §364(c)(2) to renew its insurance policies or enter into new insurance arrangements, as may be required to maintain adequate insurance coverage. In support of the motion, Debtor states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the matter pursuant to 28 U.S.C. § § 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § § 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 364, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. § § 101 *et seq*., ("Bankruptcy Code").  Such relief is governed by Bankruptcy Rule 4001(c).

**CONCISE STATEMENT OF RELIEF REQUESTED**

3.      Debtor requests entry of an interim order initally authorizing the Debtor to obtain credit on a secured basis to renew its various insurance policies (collectively, the "Insurance Policies") from Liberty Northwest under which USPF pays the premium and takes a security interest in the new Insurance Policies, and the Debtor repays the credit with a down payment and monthly payments.  Although USPF has required an order in the form attached hereto as the Proposed Final Order, Exhibit C, which Debtor requests be entered as the Final Order, Debtor is initially seeking approval of the USPF Premium Finance Agreement ("Agreement") attached hereto as Exhibit A, and authority to pay the down payment and first monthly payment.  Pursuant to Bankruptcy Rule 4001, these are the material provisions of the Agreement and Proposed Orders:

   a. <u>DIP Lender and Insurer</u>:  USPF, policy premiums to be paid to North Pacific Insurance Company (Ex. A, p. 1).  The policy is underwritten by Liberty Northwest.

   b. <u>Amount</u>:  Total financed amount is $165,558.44 which consists of the insurance premium of $162,028.00 and finance charge of $3,530.44.  The total financed

amount is paid by a down payment of $32,405.60, and nine monthly payments of $14,794.76 each. (Ex. A, p. 1.[1])

c. <u>Annual Percentage Rate</u>: 6.49% (Ex. A, p. 1).

d. <u>Number of Payments and Maturity Date</u>: Nine monthly payments, starting on June 25, 2013 and ending on February 25, 2014. (Ex. A,p. 1).

e. <u>Policy Number</u>: C03174879 (Ex. A, p. 1).

f. <u>Event of Default</u>: Failure to pay any installment payment due. (Ex. A, p. 2). Payments not made within five days of due date are assessed 5% of delinquent installment. (Ex. A, p. 2, ¶ 3). After 15 days of the due date with no payment, notice of cancellation may be sent to the insurance company. *Id*. If sums are collected by an attorney, Debtor agrees that reasonable attorney fees and collection costs are 20% of balance due. *Id*.

g. <u>Liens</u>: Debtor assigns to USPF all right, title and interest in the insurance policies listed for extension of credit and all rights therein, including all dividends, unearned premiums and commissions under section 364(d)(2) (Ex. A, p. 2 and Proposed Interim Order, Ex. B, and Proposed Final Order, Ex. C).

h. <u>Borrowing Limits</u>: Under this Agreement, $165,558.44.

i. <u>Borrowing Conditions</u>: Premiums for the policies are to be financed through USPF which requires the Debtor to enter into the Agreement that includes a Security Agreement which grants USPF a secured interest in the gross unearned premiums which would be payable in the event of cancellation of the Insurance policies and which further authorizes USPF to cancel the financed insurance policies and obtain the return of any unearned premiums in the event of a default. Debtor also grants USPF the power of attorney in fact to cancel policies and collect all gross unearned premiums without proof of default for amounts due and owing. (Ex. A, p. 2, ¶ 2). When cancellation is in accordance with state law, USPF is not responsible for consequential damages and the Debtor shall be responsible for reasonable attorney fees and costs in any resulting action. *Id.* Debtor is liable for any deficiency at the highest legally allowed interest rate. *Id*.

USPF rights to sums due upon default are preserved and protected and unimpaired by the bankruptcy case or any subsequent conversion to chapter 7 or appointment of a trustee. (Ex. C). USPF may cancel all policies upon default and receive and apply all unearned insurance premiums. (Ex. B and C). Any deficiency shall be deemed an administrative expense of the estate. (Ex. B and C).

---

[1] The description of the terms and conditions of the Agreement and the Interim Order set forth in this Motion are intended only for informational purposes to provide the Court and the interested parties with an overview of the significant terms thereof and should only be relied upon for those purposes. The summaries are qualified in their entirety by the Agreement and the Interim Order. In the event there is a conflict between this Motion and the Agreement or the Interim Order, the Agreement or the Interim Order, as applicable, shall control in all respects.

j.  <u>Other Provisions</u>:  The Agreement (Ex. A, p. 2, ¶1) and Proposed Interim Order[2] (Ex. B, ¶ ) includes the following provision listed in F.R.B.P. 4001(c)(1)(B):

> The grant of a lien on the insurance policies purchased through the credit, and in particular the remaining unearned premium, as security for the remaining balance due under the Agreement.  This would remain in effect if final relief is denied.

## BACKGROUND

4.  On May 21, 2013 (the "Petition Date"), Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.  Debtor has continued in possession of its property and is continuing to operate and manage its businesses as Debtor-in-Possession, pursuant to 11 U.S.C. § § 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner, and no unsecured creditors' committee has been established in this case.

5.  Debtor, an Oregon corporation headquartered in Aurora, Oregon, was founded in 1998 and engages in the business of auto crushing, scrap metal and industrial recycling.  Debtor has branches across the state in Salem, La Grande, and Aurora.  It employs approximately 50 people with an average regular payroll of $75,000, every other Friday.  Primarily akin to a cash business, the majority of Debtor's inventory is obtained through individuals who tender metal and other industrial materials, referred to as "ferrous" and "non-ferrous material," for recycling and sale.  Debtor, in turn, sells those materials to various industrial businesses such as Metro, Schnitzer Steel, and Oregon Iron Works for recycled use.  Debtor also has a mobile crushing unit, which can be transported to sites in Oregon and Washington for on-site industrial recycling service.

---

[2] The Proposed Final Order includes a provision to waive the automatic stay on acts to take possession of and exercise control over property of the estate by allowing USPF to cancel the insurance and collect the unearned premiums without further court order. Ex.C, p.2.  That relief is not sought in the Proposed Interim Order.

Page **4** – DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO OBTAIN CREDIT TO RENEW INSURANCE POLICIES

6. In the ordinary course of business, Debtor must maintain various insurance policies. The policies are essential to remain in business and to preserve the property, assets and business of the Debtor. Debtor's main policy expired May 25, 2013. Debtor desires to renew the coverage, and the total premium is $162,028.00, which Debtor cannot pay in full at this time. The policies cannot be retained unless the premiums are financed.

## BASIS FOR RELIEF

7. In connection with the operation of its business and management of divisions, Debtor maintains numerous Insurance Policies. The Insurance Polices include coverage for, among other things, business personal property liability, general liability, automobile liability, environmental liability, excess umbrella liability, workers' compensation, directors' and officers' liability, employment practices liability, loss of business income, and other miscellaneous coverage. The third-party claims that are covered by the Insurance Policies are neither unusual in amount nor in number in relation to the extent of the business operations conducted by Debtor.

8. Maintenance of insurance coverage under the various Insurance Policies is essential to the continued operation of Debtor's business and is required under the U.S. Trustee's Operating Instructions and Reporting Requirements for Chapter 11 Cases (the "Operating Guidelines"), Oregon law, and the Debtor's various financial agreements. *See* U.S. Trustee's Operating Guidelines, p. 2 (2011) (requiring maintenance of appropriate insurance coverage). Moreover, as a fiduciary for the bankruptcy estate, the Debtor could be violating its duties if it permitted any of the Insurance Policies to lapse.

8. Certain Insurance Policies of the Debtor covering business personal property, blanket loss of income, general liability, commercial auto liability, inland marine and excess liability, expired on May 25, 2013. The companies providing the Insurance Policies and USPF have agreed to extend coverage until the Court approves this Motion, and then to renew the Insurance Policies and provide financing of the premium.

9. Accordingly, to meet its fiduciary duties as debtor-in-possession under Bankruptcy Code sections 1107(a) and 1108, the Debtor must be authorized to borrow funds to pay the premiums for insurance coverage. The Debtor has determined that there exists no practical or legal alternative to financing the Insurance Obligations through USPF.

## IMMEDIATE AND IRREPARABLE HARM.

10. The Debtor submits that, for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. In addition, at the June 6, 2013 hearing before this Court, all creditors present agreed that insurance policies were essential to maintain the security of Debtor's assets. USPF is requiring approval of the Agreement and payment of the down payment and first installment by June 25, 2013 to go ahead with the financing. The Debtor believes that if its Insurance Obligations are not paid as soon as possible and on an expedited basis, the Debtor's Insurance Carriers may seek to terminate the Debtor's Insurance Policies.

11. The effect of potential cancellation of the Insurance Policies—or even litigation regarding the same—would be devastating to the Debtor's estate, particularly at this early stage of this chapter 11 case. Moreover, cancellation of the Insurance Policies

would render the Debtor in violation of the Operating Guidelines, various state laws, and the Debtor's financing arrangements with its secured creditors.  Accordingly, the Court should allow the payment of prepetition Insurance Obligations as requested herein.

12. The Debtor provided notice of this motion, with its proposed Interim Order and Final Order, to the United States Trustee, its secured creditors, creditors holding the 20 largest unsecured claims, and persons requesting notice.  Further notice is not practical given the circumstances.  The Debtor asks the court to find that it provided sufficient notice given the particular circumstances.  All parties who are most interested in the case attended the hearing on cash collateral on June 6, 2013, and agreed to the Debtor's request to finance its insurance policies and the payments for such in its budget.  Therefore, there is no need for a hearing on the interim relief now sought.

WHEREFORE, Debtor prays that this Court enter an order authorizing Debtor to enter into the Agreement with USPF on the terms of the Proposed Interim Order and, after a final hearing, authorize all the relief sought by USPF in the Proposed Final Order.

Dated this 20th day of June, 2013

        MCEWEN GISVOLD LLP


        By: */s/ James Ray Streinz*
           James Ray Streinz, OSB No. 794107
           Telephone:  (503) 412-3512
           E-mail: rays@mcewengisvold.com
        Attorneys for the Debtor

# PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT



PO Box 924647
Norcross, GA 30010
(phone) 770-446-8773    (fax) 678-969-0399

**Quote: 129663.1**

| | |
|---|---|
| ☐ | CONSUMER-PERSONAL |
| ✓ | COMMERCIAL |
| ✓ | NEW CONTRACT |
| ☐ | ENDORSEMENT TO EXISTING |

| INSURED: Name and Address (as stated in policy) | PRODUCER: Name and Place of Business |
|---|---|
| Wurdinger Holdings Inc. dba Wurdinger Recycling, Inc.<br>PO BOX 849<br><br>Aurora, OR 97002<br>TELEPHONE: 503-266-2701    FAX: | Arnold, Bruce & Doerfler<br>1405 SW 14th Ave<br><br>Portland, OR 97201-2510<br>TELEPHONE: 503-222-1951    FAX: 503-222-5825 |

In consideration of the premium payments paid by U.S. Premium Finance (USPF) on behalf of the borrower, the named Borrower promises to pay to the order of USPF the Total of Payments, subject to the provisions hereinafter set forth. Payment will be deemed made when actually received by USPF

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| 1. TOTAL PREMIUM(s) | 2. DOWN PAYMENT | 3. UNPAID PREMIUM BALANCE | 4. FL DOC STAMP CHG | 5. AMOUNT FINANCED | 6. FINANCE CHARGE | 7. TOTAL OF PAYMENTS | 8. DEFERRED PAYMENT PRICE |
|---|---|---|---|---|---|---|---|
| $162,028.00 | $32,405.60 | $129,622.40 | $0.00 | $129,622.40 | $3,530.44 | $133,152.84 | $165,558.44 |

| 9. ANNUAL PERCENT RATE the cost of your credit at a yearly rate | | 10. AMOUNT OF EACH PAYMENT | 11. NUMBER OF PAYMENTS | 12. WHEN FIRST PAYMENT IS DUE |
|---|---|---|---|---|
| 6.49% | YOUR PAYMENT SCHEDULE WILL BE > | $14,794.76 | 9    Monthly | 6/25/2013 |

SECURITY: You are giving a security interest in the policies listed below and in the collateral listed on the attachment or reverse side.
LATE CHARGE: See Disclosure Statement, item number (3) three.
PREPAYMENT: If you pay off the loan early, you may be entitled to a refund of part of the finance charge.
AMORTIZATION SCHEDULE: Check box for amortization detail. ☐

BOX #3 ABOVE: Paid to insurance companies listed in schedule of policies below.
BOX #4 ABOVE: Official fees paid to Florida Department of Revenue.
FLORIDA DOCUMENTARY STAMP TAX: Required by law when the amount Indicated in box #4 has been paid or will be paid directly to the Florida Department Of Revenue. Certificate of Registration #650370655-15-01.

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY OR ANNUAL INSTALLMENT | (1) FULL NAME OF INSURANCE COMPANY AND BRANCH OFFICE ADDRESS (2) NAME AND ADDRESS OF GENERAL AGENT TO WHICH POLICY PREMIUMS PAID | TYPE OF COVERAGE | POLICIES SUBJECT TO AUDIT YES \| NO | POLICY TERMS IN MONTHS COVERED BY PREMIUM | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| C03174879 | 5/25/2013 | North Pacific Insurance Company<br>P. O. Box 5048 Portland, OR 97208 | PACKAGE | ✓ \| ☐ | 12 | Prem: $162,028.00<br>Taxes: $0.00<br>Fees: $0.00 |

Note: If the down payment is made by check, it is accepted subject to cancellation. If the check is dishonored, this agreement shall be deemed not to have been accepted even if an initial notification of acceptance has been issued by US Premium Finance.

NOTE: NON-PAYMENT MAY RESULT IN CANCELLATION OF ABOVE POLICIES.

NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.

THE UNDERSIGNED BORROWER AND OR ITS REPRESENTATIVE INSURANCE AGENT OR BROKER HAS SIGNED THIS LOAN AGREEMENT. EACH HAVE RECEIVED A COPY OF THIS LOAN AGREEMENT AND AGREE TO ALL OF THE TERMS OF THIS AGREEMENT, NOW THEREFORE ON THIS_____DAY OF_____20____

X_____
SIGNATURE OF BORROWER
(If Corporation, Title of Officer Signing)

**AGENT/BROKER CERTIFICATION**
The undersigned Agent/Broker, hereinafter referred to as "Agent", hereby represents and warrants that all policies listed in this agreement have been issued and delivered, that the policies listed in this agreement are not currently nor have they ever been the subject of any other premium finance agreement, that the down payment as shown in the contract has been paid (in good funds), that all policies therein were issued by the agency, and that all information, including the cancellation provisions effecting the return premium, for any of the policy(ies) listed has been accurately represented in the quote and any and all fully earned provisions that exist in the policies named in this loan have been disclosed. The Agent warrants that the above contract evidences a bona fide and legal transaction, that the Borrower is of legal age and has capacity to contract, that the Borrower has not filed for or is not preparing to file for bankruptcy protection, that the signature is genuine, and that Agent has delivered a copy to the Borrower. Agent agrees that if any warranties contained in this agreement are found to be untrue, it will immediately remit to US Premium Finance the full amount then remaining unpaid on this premium finance agreement. Upon termination of this Agreement or cancellation of any scheduled policies, the Agent agrees to        return any and all returned premiums  returned commissions Finance with   ten (10) business days of receipt or according to applicable state law.

X_____    X_____
PRINT NAME OF AGENT OR BROKER        SIGNATURE OF AGENT OR BROKER

EXHIBIT A
Page 1

**DISCLOSURE STATEMENT**

WITNESSETH:
US Premium Finance will hereinafter be referred to as "Finance Company" and the person/entity listed on Page 1 of the finance agreement under the section titled "Borrower" shall be hereinafter referred to as "Borrower" or "Insured". That in consideration of the payment by the Finance Company to the respective insurance companies, or their agents, of the balance of the premiums upon the policies hereinbefore described on the reverse side hereof (which policies have been issued and delivered to the Borrower at his request), the Borrower promises to pay to the Finance Company the amount shown in the completed schedule on the reverse side hereon under the caption "Total of Payments", with service charge thereon as in said Schedule of Policies provided; and the Borrower agrees to the following terms set forth by the Finance Company:

1. To secure all liabilities owed from the Borrower to the Finance Company, the Borrower assigns to the Finance Company all of their right, title and interest in the insurance policies listed on the preceding pages hereof, and all rights therein including all dividends, unearned premiums and unearned commissions.

2. The Borrower hereby appoints the Finance Company, its officers and agents, as their attorney-in-fact with full power and authority to cancel the policies listed on the first page hereof, for non-payment of premium. The insurance companies listed on the first page, or its authorized agent are hereby authorized and directed, upon the request of the Finance Company, to cancel said policies and to pay to the order of the Finance Company all gross, unearned premiums thereon without proof of default here under of breach hereof the amount owing hereunder. When cancellation by the Finance Company is in accordance with the laws of the State of issuance, the Finance Company is not responsible for consequential damages, and the Borrower, or plaintiff acting on behalf of the borrower, shall be responsible for costs and attorney's fee in any action filed as a result thereof. The Borrower shall remain liable for any deficiency together with interest at the highest allowable legal rate.

3. If any installment due hereunder is not paid within five (5) days of the due date, Borrower agrees to pay a delinquency and collection charge of $10.00 or 5% of the delinquent installment, whichever is greater; provided, however, that if the premium agreement is primarily for personal, family, or household purposes, the delinquency and collection charge shall be $10.00. If any installment due hereunder is not paid within fifteen (15) days of the due date, Borrower acknowledges and agrees that Finance Company may send notice of cancellation to the insurer which issued each of the policies listed on any and all of the preceding pages. In the event that sums due under the Finance Agreement are collected by an attorney, Borrower further agrees to pay reasonable collection costs and attorney's fees of 20% of the balance due. This contract will be construed by the laws of the state of issuance. Borrower consents to jurisdiction in the civil courts of Gwinnett County, Georgia and waives any right to claim lack of personal jurisdiction in such court, for any proceedings to enforce the obligations of this Finance Agreement.

4. The Borrower agrees that the Finance Company may endorse the Borrower's name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this agreement, returning any excess amount equal to or greater than one dollar ($1.00) to the Borrower.

5. In the event a payment is made by a check or draft and is returned because of insufficient funds to pay it, the Borrower agrees to pay the Finance Company an additional Twenty Five Dollars ($25.00) or the amount charged by the Finance Company's Bank, whichever is greater.

6. If a policy listed on the preceding pages hereof is not issued at the time this agreement is executed, the Borrower gives the Finance Company authority to fill in the name of the insuring company or authorized agent, policy number and the due date of the first payment. Upon request of the Borrower, the Finance Company may advance to the Borrower's agent or the insuring company any additional premiums that may become due, less normal down payment, adding the advance amount, plus any finance charge, to the Borrower's present contract.

7. The Borrower recognizes and agrees that the Finance Company is a lender and not an insurer and that the Finance Company assumes no liability here under as an insurer. The Borrower agrees that all payments here under shall be made directly to the Finance Company and payment by the Borrower to any other person, firm, insurance agent, or insurance company shall not constitute payment to the Finance Company. Borrower further agrees and understands that the broker, agent, or insurance company whose name appears on the Premium Finance Agreement is not a representative of the Finance Company and has no authority to promise anything on behalf of the Finance Company. Furthermore, the Borrower understands that the Finance Company makes no warranties or representations concerning the financed coverage nor has it played any part in the selection, structuring, or acquisition of Borrower's insurance coverage.

8. The Finance Company shall have the right to accept any payment or payments from the Borrower after notice of cancellation has been sent to the insurance company(ies) and may apply them as a reduction of the indebtedness hereunder and neither the acceptance nor the application of any such payment or payments shall constitute an undertaking on the part of the Finance Company to reinstate such insurance or constitute a waiver of any default hereunder. In the event the Finance Company requests reinstatement of such insurance, the Finance Company assumes no responsibility that such request will be received or honored by the insurance company, and the Borrower must verify the existence of coverage directly with the insurance company or its agent.

9. Interest on the loan is earned each month according to the policy effective date based on the Rule of 78's. If the Borrower pays off the balance due prior to maturity, they may receive a refund of a portion of the total finance charges. No refund need be made if it is less than $5.00. Payment due dates will commence on the date provided in Box 12 and should continue each consecutive month (or quarter) for the number of months (or quarters) in Box 11.

10. This contract is subject to approval and acceptance by the Finance Company. Finance Company may decline the loan, known as a Premium Finance Agreement, for any reason at its discretion.

11. This contract may ONLY be assigned by Finance Company or its successors. Borrower agrees not to assign the policy (except for the interest of mortgagees) without prior written consent of Finance Company.

12. The money paid by Finance Company is only for the premium as determined at the time this agreement is accepted by Finance Company. Finance Company's payment shall not be applied by the insurance company to pay for any additional premiums owed by Borrower as a result of any type of misclassification of the risk. Borrower agrees to pay the insurance company directly for any additional premiums which become due for any reason including, but not limited to an audit. Finance Company may however, at its option, finance the additional premium according to written agreement.

13. In the event of Fraud or any other type of misrepresentation, the Finance Company has the right to "Call" in the loan at anytime at their discretion.

14. The Borrower recognizes and agrees that the producing insurance agent may add a fee to the base annual percentage rate as compensation relating to the origination of the premium finance agreement. All parties to this transaction agree that these fees will be earned on a pro-rata basis.

This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

The Borrower represents and warrants as follows:
That all financial information or financial representations given to Finance Company are true and correct in all respects, and fully and accurately present the financial conditions reflected therein. The execution, delivery and performance of this Agreement by Borrower is within the requisite corporate or limited liability company power, and has been duly authorized. This Agreement, when duly executed and delivered, will constitute legal, valid, and binding obligations of Borrower and will be applicable to and secure the payment and performance of the Note as described herein.

There are no actions, suits, or proceedings pending, or to the knowledge of Borrower, threatened against or affecting the Borrower, or involving the validity or enforceability of this Agreement or the priority of the liens thereof. Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority. The Borrower is not a Debtor under any bankruptcy proceeding of Title 11 of the U.S. Statutes nor have any such been proceedings been threatened. Borrower is not insolvent and is not the subject of any actions or receiverships. Borrower is not in any default with any other lender.

The Borrower hereby irrevocably authorizes the Finance Company at any time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of the Borrower or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the jurisdiction, or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the Uniform Commercial Code of the jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment.

There are no other liens on, or security interests in, the Collateral.

The Federal Equal Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of sex or marital status. The Federal agency which administers compliance with this law concerning this Premium Finance Company is the Federal Trade Commission, 730 Peachtree Street, N.E., Room 800, Atlanta, Georgia 30308.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>WURDINGER HOLDINGS, INC.<br><br>Debtor. | Bankruptcy Case No.  13-33225-elp11<br><br>[PROPOSED] INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT TO RENEW INSURANCE POLICIES |

This matter having come before the Court upon motion of the Debtor, requesting authorization for the Debtor to enter into a Premium Finance Agreement ("Agreement") with U.S. Premium Finance ("USPF"), which Agreement provides for the financing of the insurance premiums to be paid for the Debtor's insurance policies, and the U.S. Trustee and counsel for the secured creditors having stipulated to the authorization sought in this Interim Order, and it appearing that all legal requisites having been met and sufficient cause appearing, and this Order being necessary to avoid immediate and irreparable harm to the estate pending a final hearing, it is hereby:

Case 13-33225-elp11    Doc 65    Filed 06/21/13

ORDERED that, pursuant to Section 364 (c) (2) of the Bankruptcy Code, the Debtor is hereby authorized to enter into the Agreement, a copy of which is annexed hereto and made a part hereof; and it is further

ORDERED that the Debtor is hereby directed to pay USPF a down payment of $32,405.60 and a monthly payment for June 2013 in the amount of $14,794.76; and it is further

ORDERED that the rights of USPF pursuant to the Agreement shall remain unimpaired by any subsequent conversion of this proceeding to a Chapter 7 or any subsequent appointment of a trustee; and it is further

ORDERED that, in the event that the Debtor defaults upon any of the terms of the Agreement, any sums that still remain due to USPF pursuant to the Agreement shall be deemed an administrative expense of the estate; and

IT IS FURTHER ORDERED that a Final Hearing on Debtor's Motion For Interim and Final Orders Authorizing Debtor To Obtain Credit To Renew Insurance Policies shall be held on July 10, 2013 in Courtroom #1, U.S. Bankruptcy Court, in Portland, Oregon at 1:30 p.m., and that Debtor shall provide notice as required by LBF 541.

# # #

**Presented by:**

MCEWEN GISVOLD LLP

By: */s/ James Ray Streinz*
   James Ray Streinz, OSB No. 794107
   Telephone:  (503) 412-3512
   E-mail: rays@mcewengisvold.com
Attorneys for the Debtor

Page **2** – [PROPOSED] INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT TO RENEW INSURANCE POLICIES

EXHIBIT B
Page 2

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>WURDINGER HOLDINGS, INC.<br><br>      Debtor. | Chapter 11 Proceedings<br>Bankruptcy Case No. 13-33225-elp11<br><br>(PROPOSED) FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT TO RENEW INSURANCE POLICIES |

    This matter having come before the Court upon motion of James Ray Streinz, the Attorney for the Debtor, requesting authorization for the Debtor to enter into a Premium Finance Agreement ("Agreement") with U.S. Premium Finance ("USPF"), which Agreement provides for the financing of the insurance premiums to be paid for the Debtor's insurance policies, and the Court having heard the arguments of the interested parties, and it appearing that all legal requisites having been met and sufficient cause appearing, it is hereby:

    ORDERED that, pursuant to Section 364 (c) (2) of the Bankruptcy Code, the Debtor is hereby authorized to enter into the Agreement, a copy of which is annexed hereto and made a part hereof; and it is further

Page 1 – (PROPOSED) FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT TO RENEW INSURANCE POLICIES

EXHIBIT C
Page 1

ORDERED that the Debtor is hereby directed to pay USPF all sums due pursuant to the Agreement; and it is further

ORDERED that the full rights of USPF pursuant to the Agreement and controlling state law be and the sums hereby are fully preserved and protected and are and shall remain unimpaired by the pendency of the bankruptcy case or any subsequent conversion of this proceeding to a Chapter 7 or any subsequent appointment of a trustee; and it is further

ORDERED that, in the event that the Debtor defaults upon any of the terms of the Agreement, USPF may exercise such rights as it may otherwise have under state law, but for the pendency of this proceeding and, without the necessity of further application to this Court, cancel all insurance policies listed on the Agreement or any amendment thereto, and receive and apply all unearned insurance premiums to the account of the Debtor.  In the event that, after such application of unearned premiums, any sums still remain due to USPF pursuant to the Agreement, such deficiency shall be deemed an administrative expense of the estate..

# # #

Presented by:

McEWEN GISVOLD LLP


By: */s/ James Ray Streinz*
    James Ray Streinz, OSB No. 794107
    Telephone:  (503) 226-7321
    E-mail: rays@mcewengisvold.com
Attorney for the Debtor